J. T. Bogan v. The State.

*No. 3860.   Decided December 9.*

1. **Practice—Reserving Exceptions to Charge of the Court.**—After reading his charge to the jury, which had previously been submitted to counsel for defendant, the court requested said counsel if they desired to reserve any exceptions to the charge to present said exceptions, and said charge would if necessary be corrected; to which counsel answered that they had a number of exceptions, but that as the court could not alter or amend his charge after it had been read to the jury and filed they would avail themselves of their right to except after the jury retired and before they returned a verdict; whereupon the bill of exceptions to the charge was allowed and approved within five minutes after the jury retired. *Held*, that no error is shown, inasmuch as defendant's exceptions were allowed as soon as presented to the court; and *held* further, that the mere fact that the matters complained of occurred in the presence of the jury does not constitute error.

**2. Same—Cases Distinguished.**—See a distinction pointed out by the court between this case and the cases of McCall v. The State, 14 Texas Court of Appeals, 353, and Phillips v. The State, 19 Texas Court of Appeals, 158, upon this matter.

**3. Retirement of Jury—Practice as to.**—There may be exceptional cases when it would not only be right but eminently proper for the court to retire the jury during the pendency of argument or investigation of matters questionable as to the influence they may have upon the jury; but this as a matter of practice is largely discretionary with the judge, and a failure to retire the jury will not constitute reversible error where no prejudice or injury to defendant is shown.

APPEAL from the District Court of Haskell, on change of venue from Throckmorton. Tried below before Hon. J. V. Cockrell.

This appeal is from a judgment of conviction for murder in the first degree, wherein the punishment assessed was a life-term imprisonment in the penitentiary.

Though the rulings of the court as announced in the opinion do not call for a statement of the facts connected with the killing, it may not be inappropriate, in view of the serious nature of the punishment imposed, to give a very brief summary of the important features of the evidence, as shown by the record.

The murdered man, C. P. Kean, was a small sheep-owner, who at the time of the killing was in charge of his sheep on Boggy Creek, in Throckmorton County. Defendant was in charge of a herd of sheep belonging to a third party, which he had in charge a short distance from the place where Kean had his camp. The parties had had one or more previous difficulties, and on one occasion weapons had been drawn, deceased having a knife and defendant a Winchester rifle. Deceased was a small, delicate man, near-sighted, deaf, walked one-sided, and was hump-shouldered, but was a high-tempered, fearless, and dangerous man.

There was only one eye-witness to the killing, which occurred on the morning of August 1, 1890. This witness, Willie Landsaw, in substance stated, that on that morning they started their sheep out from camp, and they ranged down the creek toward Kean's camp. At the same time Kean's sheep were ranging up the creek, and the latter soon seemed to be crossing the creek to the south side. Witness and defendant then commenced moving their sheep to the north side of the creek to prevent the sheep of the two herds from mixing. When Kean got up close to their sheep he commenced hissing at them. When he got within about one hundred or one hundred and twenty-five yards, defendant got up, with his gun in his right hand, saying, "Yonder is Kean, driving them sheep!" and went in the direction of Kean, Bogan (the defendant) going south and the deceased coming north. Before they met Kean turned to the right, as though he saw Bogan, and when about seven steps apart Bogan stopped and put his gun to his shoulder. Kean advanced, not changing his pace, and when he got

within about one foot of the muzzle of the gun it fired, and Kean fell. After this witness saw nothing more, but heard two shots. After the killing, when Bogan came back to where witness was, and witness asked him "What he did that for," defendant replied, "I was not going to let him kill me." Some week or ten days afterward witness said that he asked defendant if Kean said anything when he shot him. He replied, "He said, 'Oh, Lordy!' and I knew that he was then in hell."

Defendant, who testified in his own behalf, after detailing the antecedent circumstances up to his meeting with deceased, said: "When I got within about seven steps of him I said 'good morning' to deceased, and he made no reply. I asked him what he was doing driving my sheep. He said, 'I am after you,' and ran his right hand in his pocket. I raised my gun and told him to stop. He continued to come on, and I told him a second time to stop, and stepped back a step or two, and he came on, and when he got within a foot of the gun I shot him. I killed him because I was afraid he would grab my gun and cut me to pieces with his knife. * * * I shot him in the breast the first time, and he fell on his right side and drew his hand out of his pocket and threw both of his hands to his breast. He made no effort to do anything after he fell, and I can't tell why I shot him the last two shots, after he was down."

The other testimony in the case showed that after the killing no weapons of any kind were found on or about the body except two old pocketknives, which were found unopened in his pocket, and there was a coil of stake rope on the left arm, in which both hands seemed to have been entangled.

*W. H. Peckham*, for appellant, filed a brief, wherein, as to the practice which should prevail with regard to the time when a bill of exceptions to the charge of the court must be taken and reserved, he cited Phillips v. The State, 19 Texas Ct. App., 158; McCall v. The State, 14 Texas Ct. App., 353.

No brief on file for the State.

DAVIDSON, JUDGE.—Upon reading the charge the court inquired of defendant's counsel if they desired to have any special instructions given the jury. The answer being in the negative, they were asked if any exceptions were desired to be reserved to the charge given, and if so they were requested to present them, so that the charge as given could then be corrected, and any additional charges necessary could then be given. The counsel stated in reply, "that they had a number of exceptions to the charge, but the Court of Appeals had decided that a court could not alter or amend his charge after it had been read to

the jury and filed, and that defendant needed time, and would avail himself of his right to except after the jury had retired, and before they had brought in a verdict." To this the court replied: "All right, then; I will make the bill of exceptions show these facts."

The court qualified this bill of exceptions by stating that he had completed the writing of his charge and had given it to the defendant's counsel at 5 o'clock p. m., and that they had it in their possession until 10 a. m. of next day, and had carefully noted their exceptions to the charge and had them ready to present to the court as soon as the jury retired, which was done. He further states: "I have adopted the rule to write my charge in all criminal cases, and allow defendant's counsel to have an opportunity to correct any errors by offering such instructions as will protect the rights of their client, before submitting the case to the jury. I know of no law for this, but I have always believed it should be done in order to cure any defect in the charge by proper instructions offered for that purpose, rather than to have the jury brought back into court after their retirement."

The record also discloses the fact that a bill of exceptions was allowed and approved by the court within five minutes after the jury retired to consider their verdict. The action of the court is assigned as erroneous, and a reversal asked on this ground. To support his position defendant refers us to the cases of McCall v. The State, 14 Texas Court of Appeals, 353, and Phillips v. The State, 19 Texas Court of Appeals, 158.

In these cases the court refused to sign and approve the bill of exceptions reserved to the charge. In the case under consideration the bill was not refused, but allowed, and the defendant is before this court urging the alleged errors of the charge, as therein complained of, for reasons why this cause should be reversed. The cases cited are not analogous nor in point. The broad distinction between the cases cited and the one under consideration is found in the fact that in each of said cases the bill was refused, whereas in this case the bill was allowed and approved, and made a part of the record.

The mere fact that the matter complained of occurred in the presence of the jury does not necessarily constitute reversible error. If so, then every bill of exceptions taken to rulings of the court during the progress of the trial in the presence of the jury would constitute reversible error. Such practice would result in retiring the jury from the court room at any stage of the proceedings during the trial when exception is taken, and if not, then, as claimed, the necessary consequence would be the reversal of the judgment on appeal. Such a result would be farcical, if not ruinous, and would lead to unreasonable and absurd delays in the disposition of business in the trial courts. This court has never held that such a rule of practice was authorized.

The action of the court in such cases should always keep in view the pre-eminent idea involved in all criminal cases—the fair trial of the

defendant under the requisites of the written law, constitutional and legislative. The action of the court should never be such as would influence the jury adversely to the party on trial. The verdict should be untainted from any undue influence by the ruling or intimations of the trial court.

There may be exceptional cases when it would not only be right, but eminently proper, for the court to retire the jury during pendency of argument or the investigation of matters of a character questionable as to the influence they may have upon the jury. We are not discussing the inhibition imposed upon the court by the express enactment of the Legislature, but only those matters of practice that are necessarily largely discretionary with the judge as presiding officer of the court. This view is in harmony with the cases cited by the defendant.

We are of opinion that the bill of exceptions manifests no error and shows no injury resulting to defendant in the matters complained of.

There are various assignments of error urged by defendant, but after a careful examination of each of them we find no reason why the conviction in this case should be set aside, and the judgment is in all things affirmed.

*Affirmed.*

Judges all present and concurring.